RODGERS, Justice;
This case is based upon a suit to enforce an option-agreement to purchase a hog farm, together with swine located on the farm at that time. The case originated in the Chancery Court of Smith County, Mississippi, on a bill for injunction filed by appellee, Robert L. Abney, Jr., against appellant, Valley Mills Division of The Merchants Company, a Mississippi corporation, hereinafter called Company. Appellee is assignee of a written option-agreement which is the subject of the controversy. The original bill sought to enjoin appellant from removing swine from the hog farm. It was amended so as to seek a mandatory injunction requiring appellant to return certain swine which had been removed from the hog farm. A hearing was had on the amended bill on December 29, 1965, resulting in an order granting the mandatory injunction to require appellant to return certain swine to the hog farm. The bill was again amended so as to permit complainant to seek specific performance under the alleged option-contract.
The case was heard finally at the January 1966 term of the chancery court upon an agreed stipulation of facts, which resulted in a decree making permanent the temporary injunction previously ordered, and requiring appellant to deed appellee the farm and swine valued at $83,106.22 for $33,942.17.
The dispute in this case arose from the following circumstances: Prior to December 31, 1964, John Rufus Sims was owner and operator of a hog farm located upon forty acres of land in Smith County, Mississippi. He purchased considerable feed and supplies from The Merchants Company, and became indebted but was unable to pay ■the debt. He arranged with the Company *734 to accept a deed to the property, in lieu of loss by foreclosure. In consideration of such transfer, he was granted an option, in which it was agreed that he could exercise the right to repurchase the real property and fixtures after a period of approximately one year for the sum of $15,000, and the further right to purchase the hogs on the farm at their appraised market value. After providing for the repurchase of the real property, the pertinent parts of the option are as follows:
“(S)aid First Party further contracts to sell and convey all sows, hoars and pigs of various sizes and ages which are located on the aforesaid realty on the date of appraisal as hereinafter described, the terms of this Option being described as follows :
“1. This Option can be exercised by the First Party on written notice of his intention to exercise said Option, to be effective on the date of delivery of said notice to the office of Valley Mills at Vicksburg, Mississippi, within a period from December 1, 1965 to January 31, 1966 (notice must be received within these dates in order for this Option to be effective); the Second Party hereby agrees to deliver a Deed to the First Party within 15 days following the date the Option is exercised.
* * * * *
“3. First Party agrees to pay Second Party a consideration on date of delivery of the Deed, the amount of said consideration to be determined as follows:
“1. $15,000.00 for the Southwest Quarter of the Northeast Quarter of Section 35, Township 2 North, Range 9 East * * *.
“2. The fair market value for all sows, boars, or pigs of any description, on said property, said fair market value to be determined by an appraisal to be made within five days following the date the option is exercised, said appraisal to be made by agreement between a representative of First Party and a representative of Second Party * * *.
“Under no circumstances will First Party be required to pay more than the amount of First Party’s indebtedness to Second Party as shown by the books of the Second Party on December 31, 1964 (approximately $32,983.60), together with six per cent interest from date until the date Second Party delivers a Deed to First Party pursuant to exercise of this Option.”
It is apparent to this Court that the provision in the option for determining the market value of the hogs by an appraisal would be meaningless, if it is interpreted to mean that Mr. Sims was to acquire the hogs, regardless of value, for the difference between $15,000, the amount to be paid for the land, and the debt of $32,083.60. It is manifest that the limitation, as to the amount set out in the option, shows that Sims would “Under no circumstances (be) required to pay more than the amount of * * * (his) indebtedness * * and this simply relates to the value of the hogs to be determined by appraisal at the time the option was to be exercised. Sims was not, therefore, required to purchase more hogs than the sum represented by the difference between $15,000, price of the land, and amount of the original debt, plus interest.
During the period from the date of sale to the Company, December 31, 1964, and the period of time set out in the option, December 1, 1965, to January 31, 1966, the Company exercised ownership of the real and personal property deeded to it. The Company sold some of the hogs, which had been inventoried, from time to time as they became ready for market. On December 20, 1965, when the Company received the letter purporting to exercise the option, there were very few of the original herd of swine left on the property which had been sold to the Company by Mr. Sims. There was no attempt to restrict the Company from exercising the right to sell the hogs *735 inventoried. In the operation of a hog farm, it is apparent that it is necessary to dispose of hogs as they become ready for market. There is no method by which the contracting parties could ascertain in advance how many swine would be located on the farm when the option was to be exercised. We are convinced that the option to repurchase did not necessarily mean “identical hogs” but only those “which (were) are on the realty at the date of the appraisal”, and that Mr. Sims had a right to “pay for them, their market price,” as set out in the option.
The assignee of Sims gave notice that he would exercise the option and tendered the amount of the indebtedness to be paid when a deed was made to the assignee, Robert L. Abney, Jr. for real estate described in the notice, and also “together with all personal property located thereon and including the swine described as 1,381 pigs, 218 sows, 6 boars, and gilts * *
We are of the opinion, and so hold, that this offer to exercise the option to repurchase real and personal properties described in the option-agreement at its market value did not give the assignee the right to purchase a specific number of swine for the amount of the indebtedness. Notice to purchase a given number of swine is a restricted offer to purchase, and, as such, it did not comply with the option-agreement. The Company is not required to comply with the restricted offer and tender.
The chancery court erroneously granted a temporary and a mandatory injunction against appellant, The Merchants Company, and erroneously entered a decree requiring the Company to deed the property here involved to assignee, Robert L. Abney, Jr. The final decree of the chancery court requiring specific performance, and the orders allowing temporary and permanent injunctions against the Company are hereby reversed. The original and supplemental bills are dismissed. Judgment is entered against appellee, Robert L. Abney, Jr., for the sum of $1,000 (amount agreed upon by the parties as damages) due by reason of the wrongful act in suing out an injunction against The Merchants Company.
Reversed and judgment here for appellant in the amount of $1,000 and costs-.
GILLESPIE, P. J., and JONES, BRADY and SMITH, JJT., concur.